# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# OCALA DIVISION

**DIANA LYNN GRAY,**

    **Plaintiff,**

v.                                                                                      **Case No: 2:17-cv-529-Oc-JES-PRL**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

_____

# REPORT AND RECOMMENDATION[1]

Plaintiff appeals the administrative decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Upon a review of the record, the memoranda, and the applicable law, I recommend that the Commissioner's decision be **AFFIRMED.**

**I.    BACKGROUND**

For the sake of convenience, the administrative history, which is not in dispute, is copied from the Government's brief:

> Plaintiff filed applications for a period of disability and disability insurance benefits (DIB) and for Supplemental Security Income (SSI) on April 21, 2014, alleging that she became unable to work on June 14, 2013 (Tr. 78-79, 212, 219). On January 5, 2017, the Administrative Law Judge (ALJ) issued a decision denying Plaintiff's applications (Tr. 20-36), and the Appeals Council (AC) denied Plaintiff's Request for Review (Tr. 5- 8). Plaintiff has exhausted her administrative remedies and has timely filed a civil

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. See Fed. R. Civ. P. 72(b)(3); Fed. R. Crim. P. 59(b)(2); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. See 11th Cir. R. 3-1.

>action in this Court. This case is now ripe for review under 42 U.S.C.
>§§ 405(g), 1383(c)(3).

(Doc. 25, p. 1).

Plaintiff was 59 years old at the time of the ALJ's decision (Tr. 36, 235). Plaintiff completed two years of college, and her previous work included positions as a customer service representative, data entry clerk, sewer at a canvas company, report clerk, germination worker, and seed packer. (Tr. 71-73). Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: hepatitis C, chronic obstructive pulmonary disease (COPD), cirrhosis of the liver, history of alcohol dependence, depression, and anxiety. (Tr. 23).

The ALJ found that the Plaintiff had the residual functional capacity ("RFC") to perform less than the full range of light work. The ALJ found:

>The claimant could lift/carry twenty pounds occasionally and ten pounds frequently; sit six of eight hours, two hours at a time; and stand/walk six of eight hours a day, two hours at a time. She could occasionally reach overhead and she could frequently (not continuously/repetitively) reach in other directions and frequently push/pull. The claimant could frequently operate foot controls. She should never climb ladders/scaffolds nor work at unprotected heights; she could occasionally climb ramp/stairs, kneel, crouch, and crawl. She could frequently balance and stoop. She could occasionally tolerate exposure to moving mechanical parts, to operate a motor vehicle, to work in humidity/wetness, to work in dust, odors, fumes and pulmonary irritants, to work in extreme cold/heat; and to work with vibrations. She could tolerate loud (heavy traffic) noise (Ex. 30F). Secondary to mental impairments, the claimant could understand, remember, and carry out instructions for unskilled and some semi-skilled work. She could sustain attention and concentration for at least two-hour segments in an eight-hour day. The claimant could interact appropriately with others. She could adapt to usual work situations and changes for unskilled and semi-skilled work setting. She should avoid fast paced or high production goal work.

(Tr. 25).

Based upon the RFC, and relying upon the testimony of a vocational expert, the ALJ found that there were jobs that Plaintiff can perform, such as her past work as a customer service representative, sewer, office helper and order filler, as well as other representative jobs in the national economy such as file clerk, mailer, route delivery clerk, and general clerk. (Tr. 34-35). Accordingly, the ALJ determined that Plaintiff was not disabled. (Tr. 35).

## II.     STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, which is by now well-known and otherwise set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835,

838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). This is clearly a deferential standard.

### III.   DISCUSSION

Plaintiff raises five issues on appeal: (1) that the ALJ erred in considering the opinions of two consultative examiners; (2) that the ALJ erred in setting functional limitations due to Plaintiff's mental impairments in terms of skill or Specific Vocational Preparation ("SVP") levels rather than General Educational Development ("GED") levels; (3) that the ALJ improperly classified Plaintiff's past work as eight separate jobs rather than two composite jobs; (4) that the ALJ erred in finding that Plaintiff could perform other work in the national economy given that the jobs identified were semi-skilled; and (5) that the ALJ erred by failing to include in the RFC the limitation to a supportive non-confrontational environment.

#### A.   The ALJ's Consideration of Opinion Evidence

Plaintiff first argues that the ALJ erred in giving limited weight to the opinions of two consultative examiners and argues the opinions of the consultants do not constitute substantial evidence.

Plaintiff first takes issue with the ALJ's failure to credit the opinion of psychologist Maureen O'Harra, Ph.D. Dr. O'Harra completed an evaluation of Plaintiff on September 6, 2016 and, on an accompanying medical source statement questionnaire, found that Plaintiff had moderate limitations in understanding and remembering complex instructions and carrying out

complex instructions and marked limitations in the ability to make judgments on complex work-related decisions. (Tr. 831). Dr. O'Harra also indicated that Plaintiff had mild and moderate limitations in interacting with the public, supervisors and co-workers, and in responding appropriately to usual work situations and to changes in routine work setting. (Tr. 832). In making these findings, Dr. O'Harra noted that Plaintiff's "prolonged health problems" complicated Plaintiff's personality attributes, and that her health problems were disruptive to her ability to function confidently. (Tr. 831-32).

Plaintiff also takes issue with the ALJ's failure to credit the opinion of Pascal Bordy, M.D. In September 2016, Dr. Bordy performed a consultative examination of Plaintiff and noted that she could never lift or carry more than 10 pounds and could sit for only 2 hours at a time and stand or walk for 1 hour at a time. (Tr. 926). Among other restrictions, Dr. Bordy opined that Plaintiff could only sit for four hours total in an eight hour work day, and stand or walk for only two hours total in an eight hour work day. (Tr. 926). Plaintiff claims that the ALJ erred by giving the opinions of Dr. Bordy and Dr. O'Harra only limited weight and not providing an adequate explanation, while instead crediting the opinions of non-examining professionals.

The law is clear that "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Further, the opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown to the contrary. *Crawford v. Commissioner of Social Security*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v.*

*Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so. *Id*. at 1240-41.

To begin, Drs. O'Harra and Bordy were not treating physicians. Under the regulations, opinions of non-treating medical sources are not entitled to deferential status. *See* 20 C.F.R. § 416.927(c),(e); *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions of one-time examiners are not entitled to deference because they are not treating physicians). Thus, the ALJ did not err by failing to credit Dr. O'Harra or Dr. Bordy's opinions.

Next, Dr. O'Harra's opinions are found on a questionnaire entitled "Medical Source Statement of Ability to Do Work Related Activities (Mental)," and Dr. Bordy's opinions are similarly found on a form entitled "Medical Source Statement of Ability to Do Work Related Activities (Physical)," and (with the exception of some handwritten comments) are in the form of check marks on the form. (Tr. 831, 925). "Checklist opinions", however, are generally disfavored. *See Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (use of questionnaire format typifies brief and conclusory testimony). *See also Hammersley v. Astrue*, No. 5:08-cv-245, 2009 WL 3053707, at *6 (M.D. Fla. Sept. 18, 2009) ("courts have found that check-off forms . . . have limited probative value because they are conclusory and provide little narrative or insight into the reasons behind the conclusions") (*citing, inter alia, Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985)).

And, more substantively, the ALJ not only clearly articulated the weight assigned to Dr. O'Harra and Dr. Bordey's opinions, but had good reasons to assign the opinions only partial weight. The ALJ explicitly discussed both opinions and explained why she was not crediting the opinions. Regarding the opinions of Dr. Bordy, the ALJ assigned them "limited weight." (Tr. 31). The ALJ explained that Dr. Bordy's findings were based on a one-time evaluation and were "not

indicated elsewhere in the record." (Tr. 31). Specifically, the ALJ noted that no clinician recommended more than routine primary care as necessary, and that recommendations in the record reflected conservative care such as exercise, attention to diet and weight, and to stop smoking. (Tr. 31). And, the ALJ noted that Dr. Bordy's examination findings, which included full range of motion, ability to stand and walk without difficulty, no muscle atrophy and 5/5 motor strength, were inconsistent with the severe limitations he opined. (Tr. 918-24). The ALJ specifically found that the objective evidence and overall record was more consistent with Plaintiff's ability for a range of unskilled light level work. (Tr. 31).

Regarding the opinions of Dr. O'Harra, the ALJ also assigned them "limited weight." (Tr. 32). The ALJ explained that Plaintiff's mental health regiment has consisted of a medication regiment for years, suggesting it is effective. (Tr. 32, 486-98, 517-89, 773-816). In February 2016, Plaintiff reported that her treatment with the Hope Clinic was completed and her mood was improved, and that she had more confidence and was not as anxious. (Tr. 793). The ALJ noted that no clinician recommended anything more than conservative treatment, including cognitive behavior therapy and "mind quieting techniques," such as relaxation, prayer and meditation. (Tr. 32). The ALJ specifically observed that the marked limitation noted by Dr. O'Harra is not consistent with Plaintiff's history of conservative care. (Tr. 32).

In support of her RFC finding, the ALJ relied upon the medical evidence of record, including hospitalization records, conservative mental health treatment, substance use history in remission, the opinion of state agency psychological consultants, Plaintiff's own reported activities, and the opinions of medical experts Dr. Fischer and Dr. Gross. (Tr. 33). This substantial evidence upon which the ALJ relied belies Plaintiff's argument that the ALJ's decision was unsupported by substantial evidence.

For example, the ALJ assigned significant weight to the opinion of Dr. Fischer, a medical expert (ME). MEs are considered experts in the Social Security disability programs, and their opinions may be entitled to great weight if supported by the record. *See* 20 C.F.R. §§ 404.1513(b), 404.1527. Dr. Fischer noted that there was a lack of clinical support for the alleged severity of Plaintiff's symptoms. For example, he found no support for the notion that Plaintiff could only walk one-fourth of a mile, could only stand one to two hours, and needed to lie down. He found Plaintiff's complaints to be subjective and unpersuasive. Dr. Fischer found that Plaintiff was not as limited as she alleged and could sit, stand and walk in two-hour intervals, for six of eight hours. (Tr. 979, 982, 984-88).

Likewise, the ALJ assigned some weight to the opinion of Dr. Henry, the state agency medical consultant. (Tr. 31). The opinion of state agency consultants, who are also considered experts in the Social Security disability program, may be entitled to great weight if supported by the record. *See* 20 C.F.R. §§ 404.1513(b), 404.1527. Dr. Henry found that, along Plaintiff's limitations, she could stand/walk for six hours each in an eight hour work day. (Tr. 113). The ALJ also considered the medical evidence, including treatment notes from Dr. Antunes, Plaintiff's treating endocrinologist which lacked any functional limitations. (Tr. 823-24). Indeed, aside from arguing that the ALJ should have credited the opinions of Drs. Bordy and O'Harra, Plaintiff has not identified any other evidence (such as specific clinical records or treatment notes) reflecting limitations beyond those in the RFC.

The ALJ also assigned significant weight to the opinion of the state agency mental health consultant, Dr. Reback, who opined that Plaintiff had only mild limitations in activities of daily living and maintaining concentration, persistence and pace, and no limitations in social functioning. (Tr. 82-87). The opinion of Dr. Gross, the mental health ME, was also assigned

significant weight by the ALJ. Dr. Gross opined Plaintiff had generally mild and moderate limitations regarding mental and social functioning. (Tr. 999). Dr. Gross stated that "all of the mental status exams done have shown at least adequate level of functioning." (Tr. 1000).

The ALJ also considered Plaintiff's hospitalization records, which reflected a serious hospitalization in 2013, but a stable condition thereafter. (Tr. 29). And, the ALJ considered Plaintiff's admission that she stopped working prior to her alleged onset of disability for reasons other than her medical condition. (Tr. 29).

Finally, the hearing testimony supports the ALJ's RFC. For example, Plaintiff testified she was able to shop in stores, despite her fatigue. (Tr. 54). She testified that she lives alone, and her typical day includes preparing breakfast, feeding her cat, and doing house cleaning and chores such as dishes or laundry. (Tr. 58). Plaintiff also testified that she attends church. (Tr. 59). Further, Plaintiff testified regarding her generally conservative treatment for her mental health, including regular counseling and her medication regimen. (Tr. 65-66). This evidence is consistent with the treatment notes, which include references to her ability to live independently and take care of household chores, including mowing the lawn. (Tr. 803).

Taking all of this evidence into account, the ALJ's decision, including the RFC finding, is supported by substantial evidence of record. Thus, ALJ's decision should be affirmed because substantial evidence supports the ALJ's findings regarding Plaintiff's condition and her limitations. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."). The ALJ did not err in failing to credit the opinions of Drs. Bordy and O'Harra.

### B. The ALJ's Articulation of the RFC

Plaintiff next argues that the ALJ erred in articulating the RFC. Plaintiff specifically contends that the ALJ erred in setting functional limitations related to mental impairments in terms of the ability to understand, remember, and carry out instructions for unskilled and some semi-skilled work, because skill levels (SVP levels) relate to how long it takes to learn a job and not their complexity. Rather, Plaintiff contends that the ALJ should have articulated the mental RFC finding in terms of General Educational Development (GED) levels. Plaintiff's argument pertains to portions of the RFC stating that claimant "could understand, remember, and carry out instructions for unskilled and some semi-skilled work." (Tr. 25). The ALJ further specified that Plaintiff "could sustain attention and concentration for at least two-hour segments in an eight-hour day," "interact appropriately with others," and "adapt to usual work situations and changes for unskilled and semi-skilled work setting." (Tr. 25).

In response, Defendant argues that there is simply no requirement that the ALJ articulate the mental RFC finding in the way proposed by Plaintiff, and Plaintiff does not identify any direct support for her proposition. Indeed, Plaintiff's citation to *Olsen v. Astrue*, 858 F. Supp. 2d 1306 (M.D. Fla 2012), is insufficient to support Plaintiff's argument. In *Olsen,* the court did not discuss GED levels, but held that the ALJ's mental RFC finding for unskilled work with limited contact with the public did not necessarily account for the plaintiff's moderate difficulties in social functioning and in concentration, persistence or pace. *Id*. at 1318. And, as Defendant points out, the Commissioner of Social Security's disability programs are expressed in terms of unskilled, semi-skilled, and skilled work, rather than GED levels. *See, e.g*., 20 C.F.R. § 404.1568; 20 C.F.R. pt 404, subpt. P, app. 2, § 202.00(a), (b).

Here, the ALJ appropriately described Plaintiff's limitations using the terminology (unskilled and semi-skilled) contemplated in the regulations. (Tr. 25). The ALJ did not err by failing to articulate the mental RFC in terms of GED levels.

### C. The ALJ's Findings Regarding Plaintiff's Past Relevant Work

Next, Plaintiff contends that the ALJ improperly classified Plaintiff's past work as eight separate jobs, rather than 2 composite jobs. Plaintiff argues that the record demonstrates that she continued to perform prior tasks at a seed company, rather than assuming separate new jobs, and that her past work at a canvas company included both clerical and sewing components. Plaintiff argues that the ALJ improperly found that Plaintiff performed seven different jobs at the seed company, and that the ALJ should have found that Plaintiff actually performed a composite job with components of the seven jobs cited. (Doc. 21, p. 21). Plaintiff also contends that her job as a sewer at a canvas company was a composite job and was improperly classified by the ALJ. Plaintiff contends that she was not capable of performing the composite jobs as they were actually performed, and thus the ALJ's finding was in error.

In response, Defendant cites to the testimony of the vocational expert that Plaintiff's positions at the seed company were "separate and distinct." (Tr. 73-74). Defendant also cites Plaintiff's work history report in which she stated she held "various positions," at the seed company. (Tr. 262, 264, 300, 309, 315). And, although Defendant contends Plaintiff failed to properly challenge the finding regarding Plaintiff's past relevant work at the canvas company on appeal, Plaintiff disputes that argument and maintains that she raised the issue in her memorandum. (Doc. 26, p. 1).

As it stands, however, Plaintiff's argument regarding her past relevant work is essentially moot in light of the ALJ's alternative findings. The ALJ also credited the testimony of the

vocational expert that, in addition to being able to perform past relevant work, Plaintiff was capable of performing the representative occupations of file clerk, mailer, route delivery clerk and general clerk. (Tr. 35). As explained herein, the ALJ's finding that Plaintiff was not disabled under Medical-Vocational Rule 202.07 is supported by substantial evidence. Upon review, the undersigned agrees that the ALJ's RFC determination is supported by substantial evidence. Even if the ALJ had erred in classifying Plaintiff's past relevant work, any finding in that regard is harmless because Plaintiff has not established that she is unable to perform the other representative jobs in the national economy that were identified by the VE. *See Sanchez v. Comm'r of Soc. Sec.*, No. 12–11762, 2013 WL 490029, *1 (11th Cir. Feb. 8, 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (quoting *Ware v. Schweiker*, 651 F.2d 408, 412–13 (5th Cir. Unit A 1981)).

### D. The ALJ's Findings Regarding Representative Occupations

As mentioned above, relying on the testimony of the vocational expert, the ALJ found that Plaintiff was not disabled because a person with her age, education, past relevant work experience, and residual functional capacity (as well as skills acquired in her past relevant work but no additional skills) would be able to perform the representative occupations of file clerk, mailer, route delivery clerk, and general clerk. (Tr. 35). Plaintiff challenges this finding, arguing that these jobs are "beyond the RFC" because they are all semi-skilled and violate the need to avoid fast paced or high production goal work. (Tr. 23).

Aside from citing the temperament requirements of the Dictionary of Occupational Titles, Plaintiff offers no support for her contention that the jobs violate the RFC's limitations to avoid fast paced or high production goal work. Plaintiff argues that the representative jobs require a

temperament of R (performing repetitive work or performing continuously the same work according to set procedures, sequence, or pace) or a temperament of T (requiring a precise attainment of set limits, tolerances, or standards). *See, e.g.*, Detailed Job Specialty Report for File Clerk I, Doc. 21-4, p. 5. Yet, Plaintiff offers no support for her inferential leap that those requirements necessarily include fast paced or high production work goals, as distinguished from set procedures, pace or limits. And, Social Security Ruling 00-4p states that occupational evidence provided by a VE should be consistent with the occupational information supplied by the DOT and requires an ALJ to inquire about apparent conflicts between the VE's testimony and the information contained in the DOT. (*See* SSR 00-4p, 2000 WL 1898704, *2). Here, the ALJ complied with this requirement and specifically asked the VE, "[i]s your testimony consistent with the descriptions in the Dictionary of Occupational Titles," and the VE replied that it was. (Tr. 75). Plaintiff has not established otherwise.

Here, the ALJ presented a thorough, comprehensive hypothetical to the vocational expert that specifically identified the functional limitations consistent with Plaintiff's RFC. (Tr. 74-76). The vocational expert's testimony regarding the jobs that a person with Plaintiff's RFC could perform given those limitations constituted substantial evidence upon which the ALJ could rely. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The Court finds Plaintiff failed to prove that she could not have performed the jobs identified by the VE. To the contrary, the Court finds that substantial evidence supports the ALJ's findings and the conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act.

### E. The ALJ's Failure to Include Dr. Gross's Entire Opinion in the RFC

Last, Plaintiff argues that the ALJ erred because, despite giving significant weight to the opinions of Dr. Gross, the ALJ failed to include in the RFC or in questions to the VE Dr. Gross's

statement that Plaintiff could interact appropriately with supervisors and co-workers "in a supportive, non-confrontive (sic) work situation." (Doc. 21, p. 24; Tr. 999).

Indeed, Dr. Gross opined that Plaintiff had some mild mental limitations in her ability to perform simple tasks and interact with others and had some moderate limitations in her ability to perform complex tasks. (Tr. 33, 993-94). Defendant accurately observes that the explanation or qualifier that Plaintiff could interact appropriately in a supportive work situation was simply a component of his overall opinion, and not a separate limitation. Indeed, context is important, and a reading of Dr. Gross's comments reflects that he was describing Plaintiff's capabilities, as opposed to assigning a functional limitation. (Tr. 999). The Court observes that the ALJ expressly considered this aspect of the opinion and accounted for it when formulating the RFC to include that Plaintiff "could interact appropriately with others." (Tr. 25).

As observed above, substantial evidence supports the ALJ's findings regarding Plaintiff's RFC. The ALJ's RFC assessment need not mirror the opinion of any doctor, nor was she required to adopt all of the limitations the doctors assessed. *See Castle v. Colvin*, 557 F.App'x, 849, 853 (11th Cir. 2014). Here, the ALJ presented a thorough, comprehensive hypothetical to the vocational expert that specifically identified the functional limitations consistent with Plaintiff's RFC. (Tr. 57-58). The vocational expert's testimony regarding the jobs that a person with Plaintiff's RFC could perform given those limitations constituted substantial evidence upon which the ALJ could rely. *See Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). The ALJ is not required to include findings in the hypothetical that she had properly rejected as unsupported. *Crawford* v. *Commissioner of Social Security*, 363 F.3d 1155, 1161 (11th Cir. 2004).

Accordingly, substantial evidence supports the ALJ's findings and her conclusion that the Plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision

should be affirmed as substantial evidence supports her findings regarding Plaintiff's condition, her RFC, and her limitations. *See Miles v. Chater,* 84 F.3d 1397, 1400 (11th Cir. 1996) ("If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it.").

**IV.    RECOMMENDATION**

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be AFFIRMED under sentence four of 42 U.S.C. § 405(g).

**DONE and ORDERED** in Ocala, Florida on February 1, 2019.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties